Good morning, Your Honor. Ms. Carabello for Mr. Ponce-Zuniga, and I've been listening heartily to the arguments this morning. I'd originally thought I would approach my argument in terms of addressing the due process violations in Mr. Ponce's immigration hearing. But before I do that, I would like to remind myself and the Court that the District Court in this case has dismissed saying that Mr. Ponce-Zuniga had no right to attack his prior criminal conviction in her court. So I think she was operating on a mistake of fact in law, thinking she had to deny the motion because she thought for some reason that I was trying to vacate Mr. Ponce's conviction in her court, which was not what was happening. So … I might not have, but I reread the pleadings last night, and I think it was very, very obvious that the issue in the case is, was it plausible, had Mr. Ponce-Zuniga's due process rights been honored in the immigration court, was it plausible if he had been advised and had the opportunity to seek post-conviction relief and vacate or change his conviction in the State court, it was plausible he could have gotten the relief of post-conviction relief. I think it's a very simple case, and I don't know why that was missed completely by the judge, but it was. And the standard of plausibility … I didn't diagram it in court. It's a good idea. If we could use props, Your Honor, I think that'd be a good idea so you could see which arguments I'm presenting first and the flaws I see with the district court or with the government. So I think it's best to start first with … It's a good idea. Maybe even an Elmo, but I don't see the equipment here. But I do prefer props and whatnot. Bring your own equipment. It's a good idea. Let me try to do it verbally then, Your Honor. We look at the immigration hearing first, and there were numerous due process flaws in that case. Mr. Ponce wasn't represented by counsel. He doesn't have a working command or reading command of the English language. His notice to appear was given to him weeks before his immigration … What year are we in now? We are back in 2007, when he was before the immigration judge. And our question is, were his due process rights violated at that time? And I think he was not given notice of what he was charged with properly because he couldn't read the notice, and he wasn't told, you have an aggravated felony on your record. You will not get relief unless you apply for withholding of deportation, or you get post-conviction relief, or you get cat relief under the Convention Against Torture. Nobody ever said that to him, not in writing, not in court. And then … So he had no notice of his charges or his defenses. Then his waiver of counsel, I think, is very important in this case. The IJ … If you look at the transcript from the hearing, the immigration judge said to him, so did you have fine time to … Did you find time to seek counsel? Mr. Ponce says, I did, but I couldn't get one because they all require that I pay them. And so all the immigration judge did at that point was he said, okay, are you ready to take a plea … to enter a plea today? He never complied with Graham or Tawadros. In other cases, it required the immigration judge to make sure that the person before him knows that he is giving up his right to counsel, and it's voluntary. Kagan. To help educate me, counsel, on how these things work in immigration court, you have a list of counsel willing to provide free services, but when Mr. Ponce contacts them, they still want money for representation. Is that a common thing? Then he'd have to go down the list and call every single person who is willing to potentially offer free services. But apparently, in his experience, most won't do it pro bono. In my experience, and I don't appear in immigration court very much, but when I do, I tend to sit through the court proceedings a lot, and I talk to other immigration people a lot, and I've seen it, especially in Arizona and in California, that the people that are on the list, the pro bono services are overwhelmed, they don't have time, and they do need money primarily. And I rarely see anybody getting free representation. And I think your question is getting to the major point I want to make, is that the due process violation is if you can't afford an attorney, you don't get any rights. You can't you don't get anybody to sit down with you and tell you what you're charged with, what are the consequences of having an aggravated felony on your record, and what are the consequences, and what are your potential defenses, which is post-conviction relief in this case. It's clear and obvious. And if you have no attorney, you don't get any money. Kagan. Let's assume that there was a due process violation because the I.J. didn't really explain to him. Let's say the I.J. was somehow coercive in not giving him an attorney, and the I.J. didn't really explain to him what the consequences of having an aggravated felony on your record are. How is it that he's able to show actual prejudice in this case when it seems to me from the record it's pretty speculative as to what counsel could do had he been represented in order to secure post-conviction relief? I have a differing opinion on that. And I think my opinion and the expert I hired in the Federal District Court to opine about the proceedings in the Kings County criminal court, I think they're very relevant and I think they're on point. Mr. Ponce did not get the standard of care, a reasonable standard of care from his attorney at all. His attorney, first and foremost, did not make sure that his client entered into a knowing and intelligent involuntary plea agreement. He didn't tell him, he didn't advise him of the consequences of him pleading guilty. That alone would evaporate the conviction if somebody had gotten, had taken his case, gone to the court and said nobody advised him properly of the criminal, the consequences of this criminal  The other problems with that plea is that if you see what he pled guilty to, he pled guilty to receipt of stolen property that was known to be stolen and obtained by extortion. And the definition of extortion requires force, and there was no extortion or force in this case at all. In fact, it was a situation. But if you received stolen property and you knew it was stolen, that's enough to meet the statutory elements of the underlying State court conviction, isn't it? No. The statute and the complaint is read in the conjunction. It is, it was, you know that it's stolen and that it was extorted. And there was no extortion in this case. It was just bizarre. If you know your client is pleading to something that didn't happen, that's ineffective assistance of counsel. If you know, if you don't try to change your client's sentence, you don't provide any mitigation, much less you don't even ask for a sentence of less than 364 days, then that's ineffective assistance of counsel. All of these are grounds to have raised that plea. Also, he could have, excuse me, he advised the defendant of the elements of each charge. I think he might have read, I'm not sure. That's a good question. If somebody read the complaint on the record in that case. I don't know. Well, you don't have to read the record in that. You don't have to read the complaint. But you have to take a plea that's knowing and intelligently made. The other part of it that is not knowing and intelligent is the fact that the judge in the middle of the plea colloquy is the only person ever to mention the possibility of deportation. And he makes it, he warns the client mid-plea that it's possible if you have work status or a visa, you could lose your status here, something like that. He never says if you're a long-term permanent resident, this is an aggravated felony, you're going to lose your entire life here. You've been here since the 1970s, we don't care, in our community, you're going to lose it. He never told him that. Would this be an easier case for you to win if the United States Supreme Court were to hold that Padilla is retroactive? That's the question now pending in front of the court. I know that is. And I haven't read those briefs, but my attitude has been forever, and I've talked to my colleagues about this, is that Padilla has been in practice for decades. And St. Cyr, which was decided in, I think, 2003, I'll quote St. Cyr, there can be little doubt that as a general matter, an alien defendant's considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their plea. That's from St. Cyr, which occurred four years before this case. And you have the JRADS, the Judicial Recommendation Against Deportation, that were in existence for years. So attorneys were in, they were obligated, criminal defense attorneys were obligated for years to advise their clients of the immigration consequences of their plea. And so when the JRADS went away, I guess in the 1990s, everybody was still under the reasonable, the reasonable expectation of a criminal defense attorney's advocacy was still to advise of the immigration consequences of your plea. So I don't think, I think the issue of whether Padilla is retroactive is, I don't know what the word is, moot? I think it's always been in existence. We have to advise our clients properly. I think the short answer is you're telling me you can win, irrespective of the retroactivity of a Padilla. I understand that you think that. I'm asking you a slightly different question. Would it be easier for you to win, in your view, if the Supreme Court in the, I think they call it Chaidez case, were to hold that Padilla is retroactive? Yes, it would. And if you, I thought back and forth, should I continue the case for that, but we're going to argue it anyway now or later. We can continue it by not deciding it until the case comes down. Right, exactly. And I've been there before. I think I have two minutes, a little over two minutes. I'd like to reserve two minutes rebuttal. You're in debt by two minutes. What's that? You're in debt by two minutes. Okay. Oh, I am. I didn't know that. So next time you come here, you get eight minutes. I missed that. What did you say? I said the next time you come here, you get eight minutes. We keep track of this. It's a mixed argument. You're coming up next, so you only get eight. Good morning, Your Honor. Steven Wong for the United States. AUSA in the Southern District of California. The pivotal fact in this case is that on March 11, 2009, when Mr. Ponce appeared before the immigration judge, he stood convicted of an aggravated felony. And, by the way, there's no dispute in the record that he was actually guilty of that charge. He admits the facts in the excerpt of record on page 160. And to answer Your Honor's questions, at about page 158, the Court did advise him of the elements of the offense and read to him the criminal complaint. I'm sorry. I did not bring my excerpts down. Could you read that passage from 160 where you say he admits that he was guilty? Certainly. And what's the proceeding in which he's saying this? This is his change of plea transcript. Change of plea transcript in Hanford, California, on September 27, 2007. Oh, so we're in front of the State Court. Yes, Your Honor. Yeah, yeah. What page is that? Well, it begins on page 150. At the bottom of page 152, line 20 to 25, the Court read to him the allegations. And I'll just begin mid-sentence. Did unknowingly, excuse me, did unlawfully buy, receive, conceal, sell, and withhold, and aid in concealing, selling, withholding a property to whip tire rims, which had been stolen and obtained by extortion, knowing said property had been stolen and obtained by extortion. Do you understand that charge? The defendant answers yes. Well, what does that mean? How does extortion fit in there? That was the nature of the charge, that the rims had been stolen, and pleading in the conjunctive, they had been stolen or obtained by extortion. I now understand. The reason I ask the question, I wonder whether there had been an admission of guilt later than in the plea of colloquy in the State court. Of course he admitted guilt in the plea of colloquy. That's inherent in it. But his argument is that because of these problems with the proceedings leading to the plea, that it cannot be counted now. But of course he admitted guilt. I mean, that's just definitional. And for many reasons, Your Honor, that I'll get into now, I don't even think the Court ever needs to reach that question of whether there was actual ineffective assistance back in the State court. Because on March 11, 2009, when he was in front of the immigration judge, he did stand convicted of a final judgment in the State court. What proceeding are you talking about now? The immigration deportation hearing held on March 11, 2009. Aren't we supposed to be looking at the taking of the plea to begin with? Oh, that was done. I'm sorry, Your Honor. I could not hear your question. The plea that he took in the State court, doesn't that play a part in all this? It does not, Your Honor, because the conviction was final at the time he was in front of the immigration judge. That channeled or cabined the immigration judge's discretion. Well, I mean, wasn't he seeking to make a collateral attack on the plea before the judge in Kings County? I'm here. Was he seeking to make a collateral attack against the plea that he made before the State court in Kings County? He was not, Your Honor. On March 11, 2009, he had not filed any collateral attack. He had not filed an appeal. And the immigration judge asked him about that. He went above and beyond the standard for finality by asking him if he had appealed. He learned that he had not. And so because he had not filed anything to collaterally attack the conviction on March 11, 2009, there was — Well, he doesn't have to attack it at that time. He could ask the immigration judge to give him time to make that collateral attack. Well, Your Honor, that's exactly what was at issue in Lopez Velazquez, recently reaffirmed by this court just a few weeks ago in Vidal-Mendoza. And in Lopez Velazquez, the petitioner said, could you hold my hearing because in several months, I'm going to be eligible for some relief. And Lopez Velazquez says, no, the operable time is the date of the hearing. And what Your Honor is suggesting is exactly what was suggested in Grajeda v. U.S., a case cited by Petitioner. The alien in that case asked the immigration judge to continue the hearing so that he could go out and file a writ of quorum nobis. The court held, the Ninth Circuit, that the immigration judge did not err by refusing the continuance because at the time he stood before the immigration judge, and that's the critical time, he had not applied for relief. Well, you're saying if he doesn't apply for relief so he can make a collateral attack on the underlying criminal matter, if he hasn't done that before he's got to the immigration judge, that he's precluded from trying to mount a collateral attack against the underlying criminal matter? Absolutely not. I'm just saying that the immigration judge is precluded from considering that. He can be deported. He can go out, as happened in, I believe, the matter in right ad amia, another case cited by Petitioner in her brief. He could be deported, collaterally attack his conviction in state court, and if successful he could move to reopen the immigration proceedings. There is nothing that stops him from collaterally attacking it. But what's at issue before this court, and what was at issue before the immigration judge on March 11, 2009, was whether at that time, at that hearing, there was any relief available to respondent. In Garza-Sanchez, the immigrant wanted to bring constitutional challenge. Well, that relief was available to him. Pardon? It wasn't. The collateral attack on the underlying. The collateral attack was not available to him on March 11, 2009. I agree he could have left that hearing, gone out, and tried to get some future relief, but that's not the time that is at issue, because Lopez Velasquez instructs that this court must consider the relief available to the alien at the time he's before the immigration judge. The immigration judge does not need to look into the future and speculate as to what relief he might get in the future. What happens if we follow along the course that you're describing? He has a conviction in state court that's the ground for the deportation. There's some ground to think that that conviction may be set aside because of ineffective assistance of counsel, but at the time of his deportation hearing in front of the IJ, it has not been set aside. There's a motion made by his counsel in front of the IJ for a continuance in order to have time to see whether it's going to be set aside. The IJ denies the continuance and orders him deported, or in modern terminology, removed. He then institutes proceedings in the state court and continues them to try to get it set aside, but in the meantime comes back into the United States, reenters with a deportation order outstanding against him, and is convicted under 1326. He then, after the conviction, touches the conviction here in front of us, he succeeds in getting the state court conviction vacated, which means then that the deportation order was invalidly entered. Then what happens to his 1326 conviction? Well, I think that was your Honor is playing out the facts in McCloud v. Lucchesi, where the Petitioner did successfully overturn his conviction. In that case, I would expect a writ of quorum nobis to the Federal District Court. We don't have quorum nobis. Then I stand corrected, Your Honor. Some sort of collateral challenge to the Federal District Court, as often happens in cases where folks who have been convicted of 1326 end up discovering they are, have derivative claims to U.S. citizenship. They can move to vacate the, or expunge the conviction, set aside the conviction. And I think if the factual predicate for the conviction, namely, that he was deported, was no longer a legal fact, then it would be appropriate for the district court through some procedure to set aside that conviction. So you, so you think that he can get this 1326 set aside if he succeeds in his state court collateral attack on the state court conviction? If there is no longer, if there is no longer a conviction, and no longer a state court conviction. Yes. If there is no longer a state court conviction, I believe there are procedural avenues for him to set aside the, this conviction, because the factual predicate for this conviction, namely, the deportation, would no longer, would no longer be effective. Okay. But, I don't think the court needs to reach that, that issue, because as recently as December of 2012, in Bustos v. Ochoa, a case called to the court's attention in the 28-day letter we sent last week, the, this court spoke very clearly. An alien who stands before an immigration judge with a final aggravated felony is ineligible for relief. That necessarily channeled the immigration judge's discretion. And by the way, the immigration judge did, in this case, ask Petitioner about all the relief Petitioner might have received. He asked him if he feared persecution returning to Mexico for a potential asylum claim. He asked him if he feared torture if he returned to Mexico for a potential claim in the, for a CAT claim, Convention Against Torture. So the immigration judge... You're talking about the removal hearing. Yes. At the removal hearing, which is what is at issue in front of this court. Well, look, here's what it says here. You know, write to counsel. This is the immigration judge, Dennis R. James. And the defendant is a Spanish-language interpreter there. Sir, we postponed your case to give you some time to hire an attorney. Have you been able to do so? Interpreter, no. Do you need some more time to make those arrangements? No, I don't have any money for the attorney. Oh, do you have the list of legal services? Ponce, yes. Judge, did you try to contact any of those attorneys in case they can help you out for free? Ponce, yes, but they all want money. Judge, all right. Well, do you want to give up your right to be represented by an attorney and answer my questions today without an attorney? Yes. Very well. What we'll do today is I will take a plea. Are you a citizen or national of the United States? And it goes on. There's no waiver. Your Honor, that is exactly what Graham instructs the judge needs to do to find a waiver. He needs to inquire specifically as to whether he wants to continue without a knowing and voluntary response. An implied silence is not enough. No, no, no. He has to tell him about this is his obligation is to tell him about why it's important to have a lawyer and what a lawyer could be able to do for him. And it needs to be a knowing and intelligent waiver. And why it's important you have a lawyer. There's a whole process you need to go through. You just don't say, yeah, they all want money. Ponce, all right. Do you want to give up your right to be represented by an attorney and answer any questions today without an attorney? Ponce, yes. Well, I'll take your plea. With respect, Your Honor, Graham defines the outer limits of what an immigration judge must do to advise a defendant of his right to counsel. It's short of the full FORETA hearings you would see. Well, where do you have the regulation? The regulation on this issued by the part of it tells us what the immigration judge needs to cover. It's more than what you think it is. Graham tells us he needs to inquire specifically as to whether the petitioner wishes to continue without a lawyer and he needs to receive, this is the second element, a knowing and voluntary response. And in this case, the immigration judge, and this is an important difference that distinguishes this case from Ram and from Tawadros and Biwak, the immigration judge said, do you want to continue, give up your right to a lawyer and continue without a lawyer? Well, you know, we don't need to spend any more time on this. And it goes on. Are you a native citizen of Mexico? Oh, yes. Are either one of your parents a United States citizen? No. Have you been a lawful permanent resident since December 11, 1990 through San Francisco? Yes. And were you convicted in September 27 of the Superior Court in California for possession of stolen property as charged by the government? Yes. And for that offense, you were sentenced to a term of imprisonment of three years. Yes. Those were upon the appeal on that conviction. No. I mean, was he sentenced by the Superior Court in the county of Los Angeles? I'm sorry. I did not hear your answer. Was it the Superior Court in the county of Los Angeles that sentenced him? No, I believe it was Kings County. Yes, so that's all garbled up, too. That's wrong. Now you go on. Is there anything you want to tell me about your case today? No, that's all. Well, sir, based on your admissions today, the conviction that you suffered in the sentence of imposure is subject to removal. What country do you wish to be removed to? New Mexico. And he goes on. Okay. How much time? He talks about torture. And in going down each of those lines of questions, the immigration judge was exploring potential avenues of relief. Oh, is that what you're saying? That's exactly what he was doing. He was exploring 212H relief when he asked him about when he became a permanent resident, and then learning that he acquired an aggravated felony after he became a permanent resident. And likewise, with his fear of persecution in Mexico, the immigration judge was doing exactly what the regulations required him to do and exactly what Garza Sanchez says he needed to do. To require the immigration judge to speculate or go beyond that invites exactly the problems that the court explored in Vidal v. Mukasey. It would require the immigration judge to act as his lawyer, to roll up his sleeves and advise him of potentially frivolous relief because he had established, that no relief was available to him on March 11, 2009. Well, and the judge says, no, you had a right to appeal my decision to the highest court for review. You wish to appeal my decision? No. Government waives appeal. All right, sir, that's the final order. Removal. That terminates your lawful permanent residency. That concludes this case. Thank you. Okay. Let's see. You now owe us 11 minutes and 33, 34 seconds. And I'll gladly pay it, Your Honor. At the door. I'm just joking. Thank you, Your Honor. Yeah. Your Honor, I think what you're getting at is that the due process rights that were given to him by the immigration judge and the immigration judge's obligations to assist a non-represented alien before him. You can find that on page 11 for the CFR that requires that, section 2, page 11 of my reply brief. I cite section 242.17a, which is obviously meant to prompt the immigration judge to help an alien explain legal avenues of relief that might not be apparent to him or his, even if his attorney is there. The IJ has to tell him what potential avenues of relief he has. Are you agreeing, though? That's your case. That's Moran Enriquez from your court. Excuse me. On page 11, I'm citing it from my reply brief. The immigration judge does have an obligation to explore avenues of relief for even an alien that's represented. I think you got the regulation there. Yes. It's 8 CFR 242.17a, which is cited in either the Arce Hernandez case or the Moran Enriquez case. Okay. Why don't you read it? I don't have the actual CFR. I'm just citing from Arce Hernandez. And Arce Hernandez says the law is clear. Where the record contains an inference that the alien petitioner is potentially eligible for relief from deportation, the IJ must advise the alien of the possibility and give him the opportunity to develop the issue. Okay. Here's a question. It's a version of the question that Judge Wynn asked earlier. Assume that there was a violation of due process because of maybe a series of things that the IJ did improperly. Where's the prejudice that is to say what would have happened had he had a lawyer? I assume what would have happened is that the lawyer now in front of the IJ would say, you know, that state court conviction is no darn good because there was ineffective assistance of counsel. Right? Is that what you're saying? I think the district court should say there was ineffective assistance of counsel. No, I'm trying to figure out what the IJ would have done. I'm trying to figure out what's the prejudice resulting from the violation of due process in front of the IJ? Because at least as I understand the law, in order for the district judge now with the 1326, the district judge has to say, well, that IJ deportation order is invalid. And in order for that to be invalid, you've got to find due process violation and prejudice resulting therefrom. And so I'm working on the prejudice question in front of the IJ. So what's the prejudice? What would have happened differently had there been an appropriate counsel in front of the IJ representing your client? If there had been appropriate counsel, the IJ would have done, or even no counsel, because the IJ is really acting as the person's counsel. He's being obligated to do that by the CFR. Yes, I understand that. What would have happened better for your client? The lawyer would have known that the client was a long-term permanent resident and had an aggravated felony on his record. Those two things would trigger the need by the IJ or the attorney that's been hired to represent him to say, oh, what happened in those proceedings? Right. Nobody wants to put the burden on the IJs to do that, but the CFR is really doing it. Yeah, yeah, no, but keep going. Oh, sick. Okay. So they say, okay, what happened? So then the any immigration practitioner worth his or her salt would say, your basic, your most obvious relief these days is post-conviction relief. Most people now are convicted of aggravated felonies. They're a dime a dozen. They're easily, easily picked up. And people in immigration court know that. And really, it's hard to get withholding of deportation or CAT. Your normal avenue of relief is post-conviction relief, and that's the first thing that would come out of any immigration attorney's mouth. Oh, let's try to see if you can get post-conviction relief. And that's what the attorney would have done if he had an attorney and would have tried to get it. And if he couldn't get an attorney to do that, which in this case I found out, they don't even have public defenders in Kings County, he could try it himself. He had the right to try it himself. Public defenders are not part of the immigration court system. There are no public defenders in the immigration court. And there should be. I believe there should be. You don't know that. What's that? You didn't know that. No, there's no. In Kings County, when I went to look to the public defender's office for help, I found out there was none. But it doesn't matter. But they don't do it any place. Well, I think that's what makes this. There are no federal defenders, state defenders. Yeah, I keep getting pulled away from pursuing my line of questioning. Okay, so you're saying a competent lawyer in front of the IJ, realizing that we've got this aggravated felony conviction out there that is the basis for the deportation, would say to the IJ, I need a postponement or a continuance so that I can have time to do a habeas to set it aside. Yes. And so what's the IJ do then? Is the IJ compelled to wait? The IJ has guidelines and statutes and regulations and case law from this Court. They, if they don't exercise their discretion and give that person a chance to have a continuance, it can be reviewed. And usually there's cases from this Court where you've criticized IJs for their myopic insistence on running the cases through and not granting continuances. Yeah, but I ask a more pointed question than that. In the circumstance where the lawyer in front of the IJ says, I don't think that conviction in the state court is any good, I want to continue this deportation hearing in order to give me a chance to bring a state habeas, is the IJ compelled to wait for that? Because that state habeas can take years. I think that the IJ does have to grant the continuance. I think that it's the case law that says the IJ is compelled to do that. It's not an automatic grant, but it's in their discretion, and they abuse it if they don't. And what do we do? I'm trying to figure out whether it's even plausible that the IJ would wait in that circumstance, because my instinct, this is a little bit unfamiliar to me, given I've been reading cases on this for years, my instinct is that the IJ is going to say, I'm not going to wait three years for you to bring sort of a pie-in-the-sky habeas petition that might or might not succeed. Habeas petitions almost always lose, and you want me to wait this deportation proceeding for three years while you pursue something that may or may not succeed? I don't think the IJ is going to do that. I'm going to give you two answers at least. One, in my experience, the IJs grant continuances all the time. For that purpose? I've seen it in court. And in the immigration courts. But, you know, your experience is not the law of the circuit. Right. The law of your circuit is Plains v. Holder from 2012 at 652 F. 3rd. The Board of Immigration Appeals regularly. Hang on. 652 F. 3rd. It's not exactly on the issue of continuance, though. Give me a case that's relevant then, please. Okay. The myopic insistence on ñ I will have to get back to you on that, Your Honor. I cite it a lot in my pleadings. But I believe it's not an automatic rule. You have to grant a continuance. But there are CFR regulations and your case law that require an immigration judge to grant a continuance if it's reasonable, and I probably cited it. But on my right of thinking, in order for you to prevail here, you must show that there's prejudice as a result of what happened in the immigration court. And for prejudice, you've got to show that the IJ would have been willing to or would have been required to grant a continuance for seeking habeas in the state court and at least plausible ground for relief in habeas in state court. Am I wrong on that? Okay. I can show you the case, the Gregata case, that IJ gave two continuances. I don't think I need a case for that. I just want to ask you what your position is then. Is it your position that in order to show prejudice as a result of the due process violation in front of the IJ, you've got to show that the IJ would have granted continuance, and as a result of that continuance, it's plausible that the IJ would have granted continuance, and it's plausible that as a result of that continuance, habeas would have been granted? I'm not sure I needed to show that. So what do you need to show in order to show prejudice? I think I need to show prejudice in that it was plausible he could have gotten post-conviction relief. From the state court proceeding? Yes. But not plausible that the IJ would have granted continuance to get the post-conviction relief? I think I've shown it, and yes, if you think I should. I'm asking you for your position. I don't think I need to show that. You don't think you need to show that the IJ would have granted the continuance? No, but I think I already did because the IJ had granted him several continuances to look for. I think he would have given it to him anyway. I don't think I need to. Don't you have to show that the IJ would abuse his discretion in denying a continuance under that circumstance and also show that if the IJ had granted him a continuance, it's plausible he would have prevailed in state court? And here you've got a situation where it was a negotiated global plea disposition that resolved outstanding cases that your client had, including a felony failure to appear charge, and I think he had some misdemeanor convictions that were going to be taken care of with regard to the global disposition he pled to the receiving stolen property under Penal Code section. I think it was a 496 conviction. And in looking at the plea transcript, the trial court was fairly thorough in taking that plea and making sure there was a factual basis. So that's what I really struggle with is the plausibility of actually prevailing in obtaining post-conviction relief, and that's assuming that there's a due process violation in terms of failure to advise him of his right to counsel by the immigration judge and showing that had he been represented by counsel, counsel would have sought a continuance because it's an aggravated felony at that point. So counsel really had no choice in order to get any sort of relief is to get that aggravated felony set aside. Then you have to show that the IJ would have abused his discretion in failing to grant the continuance. And had he granted one, he would have shown some possibility of prevailing in the post-conviction relief. Don't you have to meet all those hurdles in order to prevail in this case? I never saw the request for the need for a continuance, which is obvious in this case, as a due process issue because it wasn't asked for. And if it had been asked for in this case, I am quite sure this judge would have granted the continuance, no problem. So it's not before us, that issue. The main due process problems with the IJ is that he's got a conflict. He's required by law and statute to act as the alien's attorney and his judge. And he has to interrogate him as if he's a prosecutor and take a plea. He can't wear all those hats and effectively represent this person. Also, by not abiding by his mandatory duty to make sure that the person makes a knowing and voluntary waiver of counsel, he was forcing Mr. Ponce and its institutionalized force where you're forcing these people who don't have money for the wherewithal to hire counsel to go without counsel. So it's an institutionalized due process violation. Could have happened with any IJ. It's also a knowing and an unintelligent and unnoticed process that occurred here. Mr. Ponce was never told he had an aggravated felony on his record. There's no proof he was told that, and he understood it. It's not in Spanish anywhere, and it's not on the immigration court's record. Secondly, related to that, is he needs to have notice of his potential defenses. And the government acts like post-conviction relief is like an anomalous, nebulous, subjective thing that never happens. But this Court just said last year, the Board of Immigration Appeals regularly grants such requests for motions to reopen when an alien's underlying conviction has been vacated due to a substantive or procedural defect in the original criminal proceedings. It happens all the time is what you're saying. That's in Plains v. Holder, 652 F. 3rd 991. And you follow that, quote, by ten citations of cases where post-conviction relief has allowed people to reopen their cases. So it's not like this was some nebulous, uncommon, unheard of potential relief that the IJ had to give notice of. He had to give notice of it. He didn't. And as far as the other case that says that. That he has to give notice of post-conviction relief? Yeah. No, but you have to give notice of discretionary relief. And where the discretion comes in with the post-conviction relief is whether you get a continuous or not. You should have all the, you know, there's a certain charm about you that can take you some distance, but not all the ways of time. So I'm reminded of a story I heard in law school by a professor. In those days, the San Francisco lawyers had come down to L.A. on a train. Now they have private jets. But this come on a train, spend the night. And so the associate, I think it was Captain Kidd who said that, gave us the story. The associate showed up and didn't have a briefcase. And the partner said, where are the authorities? And the associate said, oh, I got them in my head. Oh, well, next time, leave your head at the office, but bring the authorities to court. Sorry, Your Honor. You know. I'll get you. I've been waiting 65 years to tell that story. I'll just take it. But, you know. I'll just let it go. I think you've done fine, and now you owe us 19 minutes and four additional seconds. Is it possible that I can answer Judge Nguyen's question? Go ahead, yeah. You asked if there was plausible. I'm a patient man. You're very patient, and I appreciate that. You all are very patient. I appreciate the process here. It's very nice. There's a lot of time. No, there's not a lot of time. There's not enough. Never in these cases. Yeah. But what I really think in this case, that nobody, in their right mind, would have pled their client to a three-year term for a $30.50 tire rim that was abandoned on public property, where the plea required, it is in the conjunction, conjunctive. It's on page 152. The judge said. But the government has to prove it in the disjunctive. Which had been stolen and obtained by extortion. So they're forcing Mr. Ponce to plead to extortion, which he never did. There's absolutely no factual basis for that at all. That is ineffective assistance of counsel, and the trial court erred by taking that plea. And the district attorney's office erred by including that in the plea. And obtained by extortion. That's not there at all. So it's an invalid plea on that ground. I think he meant to say obtained by extraction. Extortion means taking something by force or violence. There was no force or violence from anybody in this case. He found the tire rims. Let's say here's the private property. This box here. You can't move away from the podium. Oh, I'm sorry. The public property is over here. No, no. You have to stay there because you're not getting into the private property. We don't have roving mics. But listen. It's been a pleasure having you here. Okay. And the court has rejected the plea. Thank you. Okay. You want to say something? Thank you for your attention. I think counsel's argument illustrates how in order to prevail, he would have to file speculation upon speculation, which Bustos V. Ochoa tells us this court cannot do. Yeah, well, we don't speculate, but, you know, there is this right to counsel. We've got a lot of cases that talk about knowing and intelligent waivers and set out what the requirements are. And that the magistrate, not the immigration judge, is required, especially in an uncounseled plea, to advise the alien of his waiver of the right to counsel  and there's a whole raft of cases on that. It's, in my opinion, it's just not what was done here. Thank you, Your Honor. We will submit on our papers an argument. Thank you.
judges: Pregerson, Fletcher, Nguyen